(Slip Opinion) OCTOBER TERM, 2018 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* STITT

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 17–765.   Argued October 9, 2018—Decided December 10, 2018[*]

Respondents Victor J. Stitt and Jason Daniel Sims were each convicted
in federal court of unlawfully possessing a firearm, in violation of 18
U. S. C. §922(g)(1).  The sentencing judge in each case imposed the
mandatory minimum 15-year prison term that the Armed Career
Criminal Act requires for §922(g)(1) offenders who have at least three
previous convictions for certain "violent" or drug-related felonies,
§924(e)(1).  The Act defines "violent felony" to mean, among other
things, "any crime punishable by imprisonment for a term exceeding
one year . . . that . . . is burglary."  §924(e)(2)(B).  Respondents' prior
convictions were for violations of state burglary statutes—a Tennes-
see statute in Stitt's case and an Arkansas statute in Sims' case—
that prohibit burglary of a structure or vehicle that has been adapted
or is customarily used for overnight accommodation.  In both cases,
the District Courts found that the state statutory crimes fell within
the scope of the federal Act's term "burglary."  The relevant Court of
Appeals in each case disagreed, vacated the sentence, and remanded
for resentencing.

*Held*:

  1. The term "burglary" in the Armed Career Criminal Act includes
burglary of a structure or vehicle that has been adapted or is custom-
arily used for overnight accommodation.  Pp. 4–8.

  (a) In deciding whether an offense qualifies as a violent felony
under the Act, the categorical approach first adopted in *Taylor* v.
*United States*, 495 U. S. 575, requires courts to evaluate a prior state
conviction by reference to the elements of the state offense, rather

————————
  [*]Together with No. 17–766, *United States* v. *Sims*, on certiorari to
the United States Court of Appeals for the Eighth Circuit.

than to the defendant's behavior on a particular occasion. A prior state conviction does not qualify as generic burglary under the Act where "the elements of [the relevant state statute] are broader than those of generic burglary." *Mathis* v. *United States*, 579 U. S. ___, ___. *Taylor*, which specifically considered the statutory term "burglary" and defined the elements of generic burglary as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime," 495 U. S., at 598, governs and determines the outcome here. Pp. 4–5.

(b) The state statutes at issue here fall within the scope of *Taylor*'s definition of generic burglary. Congress intended that definition to reflect "the generic sense in which the term [was] used in the criminal codes of most States" when the Act was passed. 495 U. S., at 598. And at that time, a majority of state burglary statutes covered vehicles adapted or customarily used for lodging. Congress also viewed burglary as an inherently dangerous crime that "creates the possibility of a violent confrontation" between the offender and an occupant or someone who comes to investigate. *Id.*, at 588. An offender who breaks into a mobile home, an RV, a camping tent, or another structure or vehicle that is adapted or customarily used for lodging creates a similar or greater risk of violent confrontation. Although the risk of violence is diminished if the vehicle is only used for lodging part of the time, the Court finds no reason to believe that Congress intended to make a part-time/full-time distinction. Respondents also argue that the vehicles covered here are analogous to the nontypical structures and vehicles that *Taylor*, *Mathis*, and other cases described as falling outside the scope of generic burglary, but none of those prior cases presented the question whether generic burglary includes structures or vehicles that are adapted or customarily used for overnight use. Pp. 5–8.

2. Sims' case is remanded for further proceedings. His argument that Arkansas' residential burglary statute is too broad to count as generic burglary because it also covers burglary of "a vehicle . . . [w]here any person lives," Ark. Code Ann. §5–39–101(1)(A), rests in part upon state law, and the lower courts have not considered it. Those courts remain free to determine whether Sims properly presented that argument and, if so, to decide the merits. Pp. 8–9.

No. 17–765, 860 F. 3d 854, reversed; No. 17–766, 854 F. 3d 1037, vacated and remanded.

BREYER, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

Nos. 17–765 and 17–766

UNITED STATES, PETITIONER
17–765          *v.*
VICTOR J. STITT, II

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

UNITED STATES, PETITIONER
17–766          *v.*
JASON DANIEL SIMS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[December 10, 2018]

JUSTICE BREYER delivered the opinion of the Court.

The Armed Career Criminal Act requires a federal sentencing judge to impose upon certain persons convicted of unlawfully possessing a firearm a 15-year minimum prison term. The judge is to impose that special sentence if the offender also has three prior convictions for certain violent or drug-related crimes. 18 U. S. C. §924(e). Those prior convictions include convictions for "burglary." §924(e)(2)(B)(ii). And the question here is whether the statutory term "burglary" includes burglary of a structure or vehicle that has been adapted or is customarily used for overnight accommodation. We hold that it does.

I

The consolidated cases before us involve two defendants,

each of whom was convicted in a federal court of unlawfully possessing a firearm in violation of §922(g)(1). The maximum punishment for this offense is typically 10 years in prison. §924(a)(2). Each offender, however, had prior state burglary convictions sufficient, at least potentially, to require the sentencing judge to impose a mandatory 15-year minimum prison term under the Armed Career Criminal Act. That Act, as we have just said, requires an enhanced sentence for offenders who have at least three previous convictions for certain "violent" or drug-related felonies. §924(e)(1). Those prior felonies include "any crime" that is "punishable by imprisonment for a term exceeding one year" and that also

> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> "(ii) is *burglary*, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." §924(e)(2)(B) (emphasis added).

The question here concerns the scope of the statutory word "burglary."

The relevant prior convictions of one of the unlawful firearms offenders, Victor J. Stitt, were for violations of a Tennessee statute that defines "[a]ggravated burglary" as "burglary of a habitation." Tenn. Code Ann. §39–14–403(a) (1997). It further defines "[h]abitation" to include: (1) "any structure, including . . . mobile homes, trailers, and tents, which is *designed or adapted for the overnight accommodation of persons*," and (2) any "self-propelled vehicle that is *designed or adapted for the overnight accommodation of persons* and is actually occupied at the time of initial entry by the defendant." §§39–14–401(1)(A), (B) (emphasis added).

The relevant prior convictions of the other unlawful

firearms offender, Jason Daniel Sims, were for violations of an Arkansas statute that prohibits burglary of a "residential occupiable structure." Ark. Code Ann. §5–39–201(a)(1) (Michie 1997). The statute defines "[r]esidential occupiable structure" to include:

> "a vehicle, building, or other structure:
> "(A) [w]here any person lives; or
> "(B) [w]hich is *customarily used for overnight accommodation of persons* whether or not a person is actually present." §5–39–101(1) (emphasis added).

In both cases, the District Courts found that the state statutory crimes fell within the scope of the word "burglary" in the Armed Career Criminal Act and consequently imposed that statute's mandatory sentence enhancement. In both cases, the relevant Federal Court of Appeals held that the statutory crimes did not fall within the scope of the word "burglary," vacated the sentence, and remanded for resentencing. See 860 F. 3d 854 (CA6 2017) (en banc) (reversing panel decision to the contrary); 854 F. 3d 1037 (CA8 2017).

The Government asked us to grant certiorari to consider the question "[w]hether burglary of a nonpermanent or mobile structure that is adapted or used for overnight accommodation can qualify as 'burglary' under the Armed Career Criminal Act." Pet. for Cert. in No. 17–765, p. i; Pet. for Cert. in No. 17–766, p. i. And, in light of uncertainty about the scope of the term "burglary" in the lower courts, we granted the Government's request. Compare 860 F. 3d, at 862–863; 854 F. 3d, at 1040; *United States* v. *White*, 836 F. 3d 437, 446 (CA4 2016); *United States* v. *Grisel*, 488 F. 3d 844 (CA9 2007) (en banc), with *Smith* v. *United States*, 877 F. 3d 720, 724 (CA7 2017), cert. pending, No. 17–7517; *United States* v. *Spring*, 80 F. 3d 1450, 1462 (CA10 1996).

## II
## A

The word "burglary," like the word "crime" itself, is ambiguous. It might refer to a kind of crime, a generic crime, as set forth in a statute ("a burglary consists of behavior that . . . "), or it might refer to the way in which an individual offender acted on a particular occasion ("on January 25, Jones committed a burglary on Oak Street in South San Francisco"). We have held that the words in the Armed Career Criminal Act do the first. Accordingly, we have held that the Act requires us to evaluate a prior state conviction "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay* v. *United States*, 553 U. S. 137, 141 (2008). A prior state conviction, we have said, does not qualify as generic burglary under the Act where "the elements of [the relevant state statute] are broader than those of generic burglary." *Mathis* v. *United States*, 579 U. S. ___, ___ (2016) (slip op., at 19). The case in which we first adopted this "categorical approach" is *Taylor* v. *United States*, 495 U. S. 575 (1990). That case, which specifically considered the statutory term "burglary," governs here and determines the outcome.

In *Taylor*, we did more than hold that the word "burglary" refers to a kind of generic crime rather than to the defendant's behavior on a particular occasion. We also explained, after examining the Act's history and purpose, that Congress intended a "uniform definition of burglary [to] be applied to all cases in which the Government seeks" an enhanced sentence under the Act. *Id.*, at 580–592. We held that this uniform definition includes "at least the 'classic' common-law definition," namely, breaking and entering a dwelling at night with intent to commit a felony. *Id.,* at 593. But we added that it must include more. The classic definition, by excluding all places other than dwellings, we said, has "little relevance to modern law

enforcement concerns." *Ibid.* Perhaps for that reason, by the time the Act was passed in 1986, most States had expanded the meaning of burglary to include "structures other than dwellings." *Ibid.* (citing W. LaFave & A. Scott, Substantive Criminal Law §§8.13(a)–(f) (1986)).

In addition, the statute's purpose, revealed by its language, ruled out limiting the scope of "burglary" to especially serious burglaries, *e.g.*, those having elements that created a particularly serious risk of physical harm. If that had been Congress's intent, adding the word "burglary" would have been unnecessary, since the (now-invalid) residual clause "already include[d] *any* crime that 'involves conduct that presents a serious potential risk of physical injury to another.'" *Taylor*, 495 U. S., at 597 (quoting 18 U. S. C. §924(e)(2)(B)(ii)); see *Johnson* v. *United States*, 576 U. S. \_\_\_, \_\_\_–\_\_\_ (2015) (slip op., at 5–10) (holding residual clause unconstitutionally vague). We concluded that the Act's term "burglary" must include "ordinary," "run-of-the-mill" burglaries as well as aggravated ones. *Taylor*, 495 U. S., at 597. And we defined the elements of generic "burglary" as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.*, at 598.

## B

The relevant language of the Tennessee and Arkansas statutes falls within the scope of generic burglary's definition as set forth in *Taylor*. For one thing, we made clear in *Taylor* that Congress intended the definition of "burglary" to reflect "the generic sense in which the term [was] used in the criminal codes of most States" at the time the Act was passed. *Ibid.* In 1986, a majority of state burglary statutes covered vehicles adapted or customarily used for lodging—either explicitly or by defining "building" or "structure" to include those vehicles. See, *e.g.*, N. H. Rev. Stat. Ann. §635:1 (1974) (prohibiting burglary of an

"[o]ccupied structure," defined to include "any structure, vehicle, boat or place adapted for overnight accommodation of persons"); Ore. Rev. Stat. §§164.205, 164.215, 164.225 (1985) (prohibiting burglary of a "building," defined to include "any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons"); see also ALI, Model Penal Code §§220.0(1), 221.1(1) (1980) (defining "'occupied structure'" for purposes of burglary as "any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present"); Appendix, *infra* (collecting burglary statutes from 1986 or earlier that covered either vehicles adapted or customarily used for overnight accommodation or a broader class of vehicles).

For another thing, Congress, as we said in *Taylor*, viewed burglary as an inherently dangerous crime because burglary "creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." 495 U. S., at 588; see also *James* v. *United States*, 550 U. S. 192, 203 (2007). An offender who breaks into a mobile home, an RV, a camping tent, a vehicle, or another structure that is adapted for or customarily used for lodging runs a similar or greater risk of violent confrontation. See *Spring*, 80 F. 3d, at 1462 (noting the greater risk of confrontation in a mobile home or camper, where "it is more difficult for the burglar to enter or escape unnoticed").

Although, as respondents point out, the risk of violence is diminished if, for example, a vehicle is only used for lodging part of the time, we have no reason to believe that Congress intended to make a part-time/full-time distinction. After all, a burglary is no less a burglary because it took place at a summer home during the winter, or a commercial building during a holiday. Cf. Model Penal Code §221.1, Comment 3(b), p. 72 (burglary should cover

places with the "apparent potential for regular occupancy").

Respondents make several additional arguments. Respondent Stitt argues that the Tennessee statute is too broad even under the Government's definition of generic burglary. That is so, Stitt contends, because the statute covers the burglary of a "structure appurtenant to or connected with" a covered structure or vehicle, a provision that Stitt reads to include the burglary of even ordinary vehicles that are plugged in or otherwise appurtenant to covered structures. Tenn. Code Ann. §39–14–401(1)(C). Stitt's interpretation, however, ignores that the "appurtenant to" provision extends only to "structure[s]," not to the separate statutory term "vehicle[s]." *Ibid.* We therefore disagree with Stitt's argument that the "appurtenant to" provision sweeps more broadly than generic burglary, as defined in *Taylor*, 495 U. S., at 598.

Respondents also point out that in *Taylor*, *Mathis*, and other cases, we said that burglary of certain nontypical structures and vehicles fell outside the scope of the federal Act's statutory word "burglary." See, *e.g.*, *Taylor*, 495 U. S., at 599 (noting that some States "define burglary more broadly" than generic burglary by, for example, "including places, such as automobiles and vending machines, other than buildings"). And they argue that the vehicles covered here are analogous to the nontypical structures and vehicles to which the Court referred in those cases. Our examination of those cases, however, convinces us that we did not decide in either case the question now before us.

In *Taylor*, for example, we referred to a Missouri breaking and entering statute that among other things criminalized breaking and entering "*any* boat or vessel, or railroad car." *Ibid.* (citing Mo. Rev. Stat. §560.070 (1969); emphasis added). We did say that that particular provision was beyond the scope of the federal Act. But the statute used the word "any"; it referred to ordinary boats

and vessels often at sea (and railroad cars often filled with cargo, not people), nowhere restricting its coverage, as here, to vehicles or structures customarily used or adapted for overnight accommodation. The statutes before us, by using these latter words, more clearly focus upon circumstances where burglary is likely to present a serious risk of violence.

In *Mathis*, we considered an Iowa statute that covered "any building, structure, . . . land, water or air vehicle, or similar place adapted for overnight accommodation of persons [or used] for the storage or safekeeping of anything of value." Iowa Code §702.12 (2013). Courts have construed that statute to cover ordinary vehicles because they can be used for storage or safekeeping. See *State* v. *Buss*, 325 N. W. 2d 384 (Iowa 1982); *Weaver* v. *Iowa*, 949 F. 2d 1049 (CA8 1991). That is presumably why, as we wrote in our opinion, "all parties agree[d]" that Iowa's burglary statute "covers more conduct than generic burglary does." *Mathis*, 579 U. S., at ___ (slip op., at 5). The question before us was whether federal generic "burglary" includes within its scope a burglary statute that lists multiple, alternative means of satisfying one element, some of which fall within *Taylor*'s generic definition and some of which fall outside it. We held, in light of the parties' agreement that the Iowa statute covered some "outside" behavior (*i.e.*, ordinary vehicles), that the statute did not count as a generic burglary statute. But for present purposes, what matters is that the Court in *Mathis* did not decide the question now before us—that is, whether coverage of vehicles designed or adapted for overnight use takes the statute outside the generic burglary definition. We now decide that latter question, and, for the reasons we have stated, we hold that it does not.

## III

Respondent Sims argues that Arkansas' residential

burglary statute is too broad to count as generic burglary for a different reason, namely, because it also covers burglary of "a vehicle . . . [i]n which any person lives." See *supra,* at 3. Sims adds that these words might cover a car in which a homeless person occasionally sleeps. Sims' argument rests in part upon state law, and the lower courts have not considered it. As "we are a court of review, not of first view," *Cutter* v. *Wilkinson,* 544 U. S. 709, 718, n. 7 (2005), we remand the Arkansas case to the lower courts for further proceedings. Those courts remain free to determine whether Sims properly presented the argument and to decide the merits, if appropriate.

We reverse the judgment of the Sixth Circuit Court of Appeals. We vacate the judgment of the Eighth Circuit Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

APPENDIX

Alaska Stat. §§11.46.300, 11.46.310, 11.81.900(b)(3) (1989) (effective 1978); Ariz. Rev. Stat. Ann. §§13–1501(7)–(8), 13–1507, 13–1508 (1978); Ark. Code Ann. §§41–2001(1), 41–2002 (Michie 1977); Cal. Penal Code Ann. §§459, 460 (West 1970); Colo. Rev. Stat. §§18–4–101(1)–(2), 18–4–202, 18–4–203 (1978); Conn. Gen. Stat. Ann. §§53a–100(a), 53a–101, 53a–103 (1985 Cum. Supp.); Del. Code Ann., Tit. 11, §§222(1), 824, 825 (1979); Fla. Stat. Ann. §§810.011(2), 810.02 (1976); Ga. Code Ann. §16–7–1(a) (1984); Idaho Code Ann. §18–1401 (1979); Ill. Comp. Stat., ch. 38, §19–1 (West 1985); Iowa Code §§702.12, 713.1 (1985); Kan. Stat. Ann. §§21–3715, 21–3716 (1988) (effective 1970); La. Rev. Stat. Ann. §14:62 (West 1974 Cum. Supp.); Me. Rev. Stat. Ann., Tit. 17–A, §§2(10), 2(24), 401 (1983); Mass. Gen. Laws Ann., ch. 266, §16A (West 1970); Mont. Code Ann. §§45–2–101(40), 45–6–204 (1983); Nev. Rev. Stat. Ann. §205.060 (1986); N. H. Rev. Stat. Ann. §635:1 (1974); N. J. Stat. Ann. §§2C:18–1, 2C:18–2 (West 1982); N. M. Stat. Ann. §§30–16–3, 30–16–4 (2018) (effective 1978); Ohio Rev. Code Ann. §§2909.01, 2911.11, 2911.12 (Lexis 1982); Okla. Stat., Tit. 21, §1435 (1983); Ore. Rev. Stat. §§164.205, 164.215, 164.225 (1985); Pa. Stat. Ann. Tit. 18, §§3501, 3502 (Purdon 1973); S. D. Codified Laws §§22–1–2(49), 22–32–1, 22–32–3, 22–32–8 (1988) (effective 1976); Tenn. Code Ann. §39–3–406 (1982); Tex. Penal Code Ann. §§30.01, 30.02 (West 1989) (effective 1974); Utah Code Ann. §§76–6–201(1), 76–6–202 (1978); W. Va. Code Ann. §61–3–11 (Lexis 1984); Wisc. Stat. Ann. §943.10(1) (West 1982).