**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4778**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROBERTO MORENO PENA, a/k/a Alberto Zapata Sierra,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Patrick Michael Duffy, Senior District Judge. (2:16-cr-00865-PMD-1)

Argued: December 10, 2019                      Decided: March 11, 2020
                          Amended: March 11, 2020

Before DIAZ and QUATTLEBAUM, Circuit Judges, and Max O. COGBURN, United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed in part, vacated and remanded in part by published opinion. Judge Quattlebaum wrote the opinion in which Judge Diaz and Judge Cogburn joined.

**ARGUED:** Emily Deck Harrill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. Marshall Taylor Austin, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF:** Beth Drake, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

QUATTLEBAUM, Circuit Judge:

Roberto Moreno Pena ("Pena") was sentenced to 24 months in prison for illegally reentering the United States subsequent to conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). In appealing that sentence, he raises two primary issues. First, Pena appeals the classification of a 1989 Texas burglary conviction as an aggravated felony for purposes of 8 U.S.C. § 1326(b), which sets out penalties for aliens who have reentered the United States after removal subsequent to conviction for certain crimes. Second, Pena appeals the district court's use of the Sentencing Guidelines in effect at the time of his sentencing because he contends they are more punitive than the version in effect at the time he committed the offense. For the reasons set forth below, we affirm in part, and we vacate and remand in part for resentencing consistent with this opinion.

I.

We begin with a review of 8 U.S.C. § 1326, the statute under which Pena was charged, pled guilty and was sentenced. Title 8 U.S.C. § 1326 prohibits the unauthorized reentry of an alien who has been previously deported from the United States. As a general matter, 8 U.S.C. § 1326(a) imposes a fine and/or imprisonment for up to two years for an alien who has illegally reentered the country. But that sentence can be increased based on the alien's prior criminal conduct in the United States. Subsection (b)(1) imposes a fine and/or imprisonment for not more than 10 years for an alien "whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony )." 8 U.S.C.

2

§ 1326 (b)(1). Subsection (b)(2) imposes a fine and/or imprisonment for not more than 20 years for an alien "whose removal was subsequent to a conviction for commission of an aggravated felony." 8 U.S.C. § 1326 (b)(2).[1]

## II.

Against that backdrop, we turn to the facts relevant to this appeal. In 1990, Pena was removed from the United States to Mexico, following a 1989 Texas conviction for burglary of a habitation. After he again reentered the country illegally, he was convicted of possession of heroin. That led to a second removal in 2002. Pena returned illegally for the third time and was later arrested for driving without a license and under the influence. Following that arrest, Pena was charged with illegal reentry after deportation subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). The indictment charged that Pena unlawfully entered and was found in the United States without express consent of the proper authorities. The sentence associated with this offense is at issue here.

While represented by counsel, Pena pled guilty. During his plea hearing, the district court informed Pena that one of the elements of the offense was a previous conviction of an "aggravated felony," which was satisfied by his 1989 Texas burglary conviction. The district court accepted his guilty plea.

---

[1] A defendant who commits an offense under 8 U.S.C. § 1326 triggers the sentencing guidelines at U.S.S.G. § 2L1.2(b), which provides sentencing enhancements for certain aggravating factors.

3

Subsequently, the United States Probation Office prepared a Presentence Report ("PSR") that calculated Pena's offense level under the 2015 United States Sentencing Guidelines ("U.S.S.G.") Manual, the manual in effect when Pena committed the offense. Based on the 2015 Manual, the Probation Office recommended a base offense of 8 with a 4-level increase for a felony conviction under U.S.S.G. § 2L1.2(b)(1)(D).[2] After other adjustments, the Probation Office recommended a total offense level of 10 which, with Pena's criminal history category of III, resulted in an advisory range of 10 to 16 months' imprisonment.

Pena objected to the PSR, arguing the 1989 Texas burglary conviction was not an aggravated felony. He also filed a Motion to Strike Surplusage or in the Alternative to Withdraw Plea, claiming that he had not been convicted of an "aggravated felony."

Just prior to sentencing, the Probation Office issued a new PSR using the 2016 Guidelines Manual, the manual in effect at the time of sentencing, rather than the 2015 Guidelines used for the first PSR. In the new PSR, the Probation Office recommended a base offense level of 8, with a 10-level increase under U.S.S.G. § 2L 1.2 (b)(3)(A) because Pena engaged in criminal conduct that resulted in a felony after he was ordered to be deported from the United States for the first time. These calculations, after other adjustments for acceptance of responsibility, led to a total offense level of 15, a criminal history category of III and an advisory guidelines imprisonment range of 24 to 30 months.

---

[2] The initial PSR does not appear to apply the crime of violence enhancement relative to Pena's 1989 burglary conviction, which, if applied, could have increased the offense level by at least 12 points.

At sentencing, Pena, still represented by counsel, objected to the new PSR. Relevant to this appeal, he argued that the 1989 Texas burglary did not qualify as an aggravated felony. Therefore, Pena argued he should not be subjected to the enhanced penalties of § 1326(b)(2). He also argued that the 2015 Guidelines Manual should be used to evaluate the sentence because it was less punitive than the 2016 Guidelines Manual.

The district court overruled Pena's objection that Texas burglary did not qualify as an aggravated felony. In making this determination, the district court applied the "modified categorical approach." Using that approach, the court found Texas burglary qualified as both a theft offense and a burglary offense under 8 U.S.C. § 1101(a)(43)(G), which are potential forms of an aggravated felony under the Immigration and Nationality Act ("INA"). Having identified an aggravated felony under 8 U.S.C. § 1101(a) of the INA, the district court proceeded with sentencing in light of 8 U.S.C. § 1326, which once again sets forth the penalties for aliens who reenter the United States after removal subsequent to a conviction of certain crimes.

The district court stated: "I would end up giving the same sentence under either of the statutory schemes." J.A. 49. It then adopted the calculations under the 2016 Guidelines Manual, which, as described above, yielded a range of imprisonment of 24–30 months. The district court sentenced Pena to 24 months, indicating that but for Pena's counsel's argument for a downward departure, presumably regarding his lengthy sentence for possession of a controlled substance, it would have sentenced him to 30 months.

After judgment was entered, Pena timely filed his Notice of Appeal on December 15, 2017.

5

III.

Before addressing Pena's arguments on appeal, we note our standard of review. Whether a crime is an aggravated felony is a question of law this Court reviews de novo. *Castendet-Lewis v. Sessions*, 855 F.3d 253, 260 (4th Cir. 2017). In evaluating whether the district court properly applied the advisory sentencing guidelines, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009). We review a sentence imposed by a district court for reasonableness, considering both procedural and substantive components. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Abu Ali*, 528 F.3d 210, 260 (4th Cir. 2008). Our jurisdiction to review is authorized by 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

IV.

With those standards in mind, we turn to Pena's arguments on appeal. Pena first argues that his 1989 conviction for Texas burglary did not qualify as an aggravated felony. The INA, at 8 U.S.C. § 1101(a)(43), lists twenty-one categories of criminal conduct that qualify as an "aggravated felony." Two of the categories pertinent here are found in subsections (F) and (G). Subsection (F) refers to "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Subsection (G) refers to "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G).

6

Originally, the government argued that Texas burglary qualified as an aggravated felony under the federal criminal code's definition of crime of violence as defined at 18 U.S.C. § 16(b), which is known as the residual clause. However, *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), issued after the government's original argument, held that the residual clause of § 16(b) as incorporated into the INA's definition of "aggravated felony" was unconstitutionally vague. In response, the government shifted its position. It now argues the Texas burglary statute constitutes a theft or burglary offense under 8 U.S.C. § 1101(a)(43)(G).[3] But Pena challenges this position as well, claiming Texas burglary does not qualify as a theft offense or burglary offense.

In evaluating Pena's argument, we must first determine the proper framework for our analysis. More specifically, we must decide whether to employ the "categorical approach" or the "modified categorical approach" in our analysis. Then, once we make that determination, we must apply the proper framework to consider whether Texas burglary qualifies as a burglary offense for purposes of the INA.

A.

We begin with the question of whether we are to apply the categorical approach or the modified categorical approach in resolving this appeal. Under the categorical approach, we focus not on the actual facts involved in the 1989 case. *Moncrieffe v. Holder*, 569 U.S.

---

[3] It also contends Pena's conduct constituted an attempted aggravated felony under 8 U.S.C. § 1101(a)(43)(U), although that is not relevant to the issues we consider today.

7

184, 190 (2013).[4] Instead, we examine whether the elements of the crime of conviction (here Texas burglary) sufficiently match the elements of a listed offense (here "burglary," in a generic sense). *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185–86 (2007). And when we refer to "elements," we mean the "constituent parts of a crime's legal definition" that must be proven by the prosecution beyond a reasonable doubt to sustain a conviction. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (internal citation and quotation marks omitted).

Under this approach, Texas burglary qualifies as generic burglary, and thus an aggravated felony, if its elements are the same as, or narrower than the elements of generic burglary. *See id.* If Texas burglary, however, covers more conduct, or is broader than generic burglary, then it does not match and thus will not qualify as an aggravated felony predicate offense. This is so regardless of whether the defendant's actual conduct factually fits within the parameters of the generic offense.

---

[4] As we again consider the *Alice in Wonderland* path known as the categorical approach, *see United States v. Battle*, 927 F.3d 160, 164 n.2 (4th Cir. 2019), we note that it is not a default rule of statutory construction. We apply it, as we held in *United States v. Simms*, 914 F.3d 229, 240 (4th Cir. 2019), when compelled to do so by the text of the applicable statute. When the text of a statute, on the other hand, refers expressly or implicitly to conduct, the circumstance-specific approach applies. *See Nijhawan v. Holder*, 557 U.S. 29 (2009) (applying the "circumstance-specific approach" to 8 U.S.C. § 1101(a)(43)(M)(i) of the INA); *United States v. Price*, 777 F.3d 700 (4th Cir. 2015) (applying the "circumstance-specific approach" in deciding that the defendant was subject to the registration requirement under the Sex Offender Registration and Notification Act ("SORNA")).

This categorical analysis is more straightforward where a statute sets forth a single, or "indivisible," set of elements to define a single crime. A court compares the elements of the statute of conviction and the elements of the generic offense to see if they match.

But some statutes have a divisible structure in that a single statute may list alternative sets of elements, thereby setting out several crimes within a single statute. *Mathis*, 136 S. Ct. at 2249. In this situation, the sentencing court must determine which of the alternative elements formed the crime for which the defendant was convicted. *Id.* To do this, the sentencing court looks to a limited class of documents such as an indictment, jury instructions or a plea colloquy to determine the crime of conviction, and then compares that crime with the relevant generic offense. *Id.*; *see also Shepard v. United States*, 544 U.S. 13, 26 (2005); *United States v. Covington*, 880 F.3d 129, 132 (4th Cir. 2018). This analysis is called the modified categorical approach.

Determining whether a statute is indivisible, in which case the categorical approach is applied, or divisible, in which case the modified categorical approach is applied, requires a careful review of the pertinent statute. If the statute contains a list of "diverse means of satisfying a single element of a single crime" or "spells out various factual ways of committing some component of the offense" it lists the various *means* of committing a single offense and is thus is indivisible. *Mathis*, 136 S. Ct. at 2249. On the other hand, if the statute sets out potential offense elements in the alternative, it in effect lists "several different crimes," and is thus divisible. *Omargharib v. Holder*, 775 F.3d 192, 197–98 (4th Cir. 2014).

9

The district court concluded the Texas statute at issue in Pena's 1989 burglary conviction involved potential offense elements in the alternative and was thus divisible. Accordingly, it applied the modified categorical approach. Pena challenges this conclusion, claiming the Texas statute contained a list of *means* of carrying out a single offense and was thus indivisible, requiring application of the categorical approach.

Recently, the Fifth Circuit, in *United States v. Herrold*, 883 F.3d 517 (5th Cir. 2018) (en banc) ("*Herrold* I"), addressed the question of whether the Texas burglary statute was divisible or indivisible. In an en banc decision, it held that Texas Penal Code § 30.02(a)(1) and (3) are not distinct offenses, but instead separate means of committing one burglary offense. *Herrold* I, 883 F.3d at 529. After canvassing several state court cases, the Fifth Circuit concluded that "Texas courts have repeatedly held that a jury need not unanimously agree on whether Texas Penal Code § 30.02(a)(1) or (a)(3) applies in order to sustain a conviction for burglary."[5] *Id.* at 523. Thus, "[u]nder *Mathis*, when state law does not require jury unanimity between statutory alternatives, the alternatives cannot be divisible." *Id.* As a result, in *Herrold* I, the Fifth Circuit concluded that the categorical approach was the proper framework for analyzing Texas Penal Code § 30.02(a), and in *United States v. Herrold*, 941 F.3d 173, 177 (5th Cir. 2019) (en banc) ("*Herrold* II"), it reinstated that

---

[5] For example, in *Martinez v. State*, the Court of Appeals of Texas addressed the question of whether subsections (a)(1) and (a)(3) of section 30.02 establish separate criminal offenses. After a detailed analysis, the court concluded that the statute did not, noting that the subsections are essentially alternative means for proving a single mens rea element without causing an affront to the jury unanimity requirement. *Martinez v. State*, 269 S.W.3d 777, 783 (Tex. App. 2008).

portion of its decision upon remand from the Supreme Court. We find *Herrold* I, as reinstated by *Herrold* II, instructive as it relates to the question of whether the Texas burglary statute is indivisible and agree with Pena that the district court erred in applying the modified categorical approach.[6] Instead, the proper analytical framework is the categorical approach.

## B.

Having determined that the categorical approach is the proper analytical framework, we turn to the question of whether Texas burglary is a match with and therefore qualifies as a burglary offense under the INA. We begin with the text of both. Under the 1989 Texas Burglary statute, § 30.02 (a), a person commits an offense if, without the effective consent of the owner, he:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; or

(2) remains concealed, with intent to commit a felony or theft, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony or theft.

---

[6] We do not find this conclusion to be in conflict with our decision in *United States v. Bonilla*, 687 F.3d 188 (4th Cir. 2012), where this Court considered a sentencing enhancement based on a Texas burglary conviction and concluded that a conviction under Texas Penal Code § 30.02(a)(3) substantially corresponds to the elements of generic burglary under *Taylor v. United States*, 495 U.S. 575 (1990) and therefore qualifies as a crime of violence. *Bonilla*, 687 F.3d at 193. From a divisibility perspective, that case appears to embrace the use of the modified categorical approach in a footnote, but it was decided prior to *Descamps v. United States*, 570 U.S. 254 (2013) and *Mathis*, which require courts to assess the divisibility of a statute before proceeding to apply a modified categorical approach. Those cases make clear that the modified approach serves a limited function—merely effecting the application of the categorical analysis. *Descamps*, 570 U.S. at 260.

Tex. Penal Code § 30.02.

Next, we turn to the INA, which does not define "burglary offense." But in determining whether a conviction falls with the scope of a listed offense, we refer to the generic definition of burglary in *Taylor v. United States*, 495 U.S. 575 (1990). *See Gonzales*, 549 U.S. at 185–86 (applying the categorical approach of *Taylor* to the INA). Under *Taylor*, burglary means the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598–99.

Two recent Supreme Court cases addressing the scope of generic burglary inform our comparison of generic burglary with burglary under the Texas statute. In *Quarles v. United States,* 139 S. Ct. 1872 (2019), the Court concluded that "remaining-in burglary . . . when the defendant forms the intent to commit a crime *at any time* while unlawfully remaining in a building or structure" falls within generic burglary. *Id.* at 1875 (emphasis in original). Then, in *United States v. Stitt*, 139 S. Ct. 399 (2018), the Supreme Court concluded generic burglary includes "vehicles designed or adapted for overnight use." *Stitt*, 139 S. Ct. at 407. "An offender who breaks into a mobile home, an RV, a camping tent, a vehicle, or another structure that is adapted for or customarily used for lodging runs a similar or greater risk of violent confrontation." *Id.* at 406. These two decisions effectively eliminated arguments that Texas Penal Code § 30.02(a)(3) was more broad than generic burglary. Thus, the Fifth Circuit in *Herrold* II held that the Texas burglary statute fell within the generic definition of burglary.

Similarly, we conclude that Texas burglary qualifies as generic burglary as defined in *Taylor*.[7] *Quarles* forecloses any argument that the Texas burglary statute is overbroad to the extent Pena argues it encompasses circumstances where a defendant develops the intent to commit a crime after an initial entry or initial decision to remain without authorization. And *Stitt* undercuts any argument that the statute is overbroad in that it includes vehicles as part of the definition of "habitation" under Texas law, a term included in all three subsections of the statute as a locational aspect of the offense.[8] As the Supreme Court stated in *Taylor* and reiterated in *Quarles*, all that is necessary is that the state statute "substantially corresponds to or is narrower than generic burglary." *Quarles*, 139 S. Ct. at 1880. We find that the relevant Texas burglary statute does so here. Thus, although we apply the categorical approach rather than the modified categorical approach, we affirm the district court in finding that Texas burglary is a burglary offense under 8 U.S.C. § 1101(a)(43)(G) and is thus an "aggravated felony" under the INA. Having so found, we need not reach the government's remaining arguments as to whether the Texas

---

[7] *Herrold* I and II considered the 2017 version of Texas Penal Code § 30.02(a), which is slightly different from the 1989 version at issue for purposes of Pena's case. The 2017 version references a "felony, theft, or an assault," where the 1989 version references only a "felony or theft." The existence of the additional "assault" language does not change the result for purposes of this analysis.

[8] Under Texas state law, the term "habitation" "means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes: (A) each separately secured or occupied portion of the structure or vehicle; and (B) each structure appurtenant to or connected with the structure or vehicle." Tex. Penal Code § 30.01 (1990); *see also Andrus v. State*, 495 S.W.3d 300, 304 (Tex. App. 2016).

burglary statute constitutes a theft or attempted theft offense under 8 U.S.C. § 1101(a)(43)(G) or (U).

At oral argument, realizing *Dimaya*, *Quarles*, *Stitt* and *Herrold* I and II had significantly altered the legal landscape of this case, Pena raised a new argument for the first time. Pena argued that Texas Penal Code § 30.02(a)(3) is broader than the generic definition of burglary because the generic definition requires a specific intent to commit a crime that accompanies the entry whereas § 30.02(a)(3) of the Texas burglary statute does not. Although an interesting argument, this Court, absent some exceptions not applicable here, will not consider arguments not made in the briefs, but raised instead for the first time at oral argument. *See Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 410 n.9 (4th Cir. 2010). Therefore, we decline to consider this argument.

V.

In addition to his argument about whether his Texas burglary conviction qualifies as an aggravated felony, Pena claims the district court committed a procedural error in applying the 2016 Guidelines Manual at sentencing. Pena claims the 2015 Guidelines should have been applied because they are less punitive than the 2016 Guidelines.[9]

---

[9] Although the Sentencing Guidelines are advisory, district courts must apply the Sentencing Guidelines in effect on the date the defendant is sentenced unless the court determines that doing so would violate the Ex Post Facto Clause of the United States Constitution. *Peugh v. United States*, 569 U.S. 530, 537–38 (2013); U.S.S.G. § 1B1.11(a), (b)(1) (2016); *United States v. Lewis*, 606 F.3d 193, 198–99 (4th Cir. 2010) (concluding that "the retroactive application of severity enhancing Guidelines amendments contravenes the Ex Post Facto Clause"). "[A]pplying amended sentencing guidelines that increase a

We normally review a criminal sentence for abuse of discretion. *Gall*, 552 U.S. at 41. In doing so, we first must examine whether the district court committed a significant procedural error, such as improperly calculating the guideline range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors or failing to adequately explain its chosen sentence. *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009). "In assessing whether a district court properly calculated the Guidelines range, including its application of any sentencing enhancements, this Court reviews the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Horton*, 693 F.3d 463, 474 (4th Cir. 2012) (internal quotation marks and alteration omitted). We then consider the substantive reasonableness of the sentence imposed in view of the totality of the circumstances. *Gall*, 552 U.S. at 51; *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011). "Federal sentencing law requires the district judge in every case to impose 'a sentence sufficient, but not greater than necessary, to comply with' the purposes of federal sentencing, in light of the Guidelines and other § 3553(a) factors." *Freeman v. United States*, 564 U.S. 522, 529 (2011) (quoting 18 U.S.C. § 3553(a)).

But we need not conduct this analysis here because, at oral argument, the government conceded that the 2015 Guidelines applied. Despite that concession, however, the government maintains the district court's failure to apply that Guidelines Manual was

_____

defendant's recommended sentence can violate the *Ex Post Facto* Clause, notwithstanding the fact that sentencing courts possess discretion to deviate from the recommended sentencing range." *Peugh v. United States*, 569 U.S. at 541. Pena claims the 2016 Guidelines are more punitive and thus applying them violates the Ex Post Facto Clause.

15

a harmless error. Although we are not bound by the government's concession of error, *United States v. Boulware*, 604 F.3d 832, 837 (4th Cir. 2010), we see no reason not to proceed to the harmless error analysis.

In order to prevail on harmlessness, the government must show that an error did not affect a defendant's "substantial rights." *United States v. Robinson*, 460 F.3d 550, 557 (4th Cir. 2006). A sentencing error is harmless "if the resulting sentence was not longer than that to which [the defendant] would otherwise be subject." *United States v. Mehta*, 594 F.3d 277, 283 (4th Cir. 2010) (internal citation and quotation marks omitted). One way that occurs is where "the record makes clear that the District Court would have imposed the same sentence under the older, more lenient Guidelines that it imposed under the newer, more punitive ones." *Peugh v. United States*, 569 U.S. at 550, n.8.

Here, the government relies on the district court's statements at sentencing to support its argument that the erroneous use of the 2016 Guidelines was harmless. The district court indicated, "as to the statutory penalty being greater under one and lesser under the other, given the guideline ranges that he's in, that's not going to affect the Court's view. I would end up giving the same sentence under either of the statutory schemes." J.A. 49. Based on that statement, the government contends, Pena would have received the same sentence under either the 2015 or the 2016 Guidelines.

But the statement from the district court does not appear to be related to the question of whether the 2015 or the 2016 Guidelines apply. Instead, it appears to indicate that whether Pena's prior criminal conduct fell within subsection (b)(1) or subsection (b)(2) of 8 U.S.C. § 1326 did not affect the court's view of an appropriate sentence in light of the

16

guideline ranges under the 2016 Manual. The district court did not indicate that the sentence it chose was appropriate regardless of whether the 2015 or the 2016 Manual was consulted to calculate that advisory guideline range.

Further, the differences in the portions of the 2015 and 2016 Guidelines relevant here are significant. As set forth above, the district court imposed a within-guideline sentence of 24 months under the 2016 Manual. To impose the same sentence using the 2015 Manual, the district court would have had to either increase the offense level by applying additional enhancements or impose an upward variance. Perhaps the district court would have done so. Indeed, there may be cases in which the record clearly shows that the district court would have imposed the same sentence under either Guidelines Manual, and that the sentence would have been reasonable either way. But that is not apparent to us from this record. *See Savillon-Matute*, 636 F.3d at 123 (affirming a sentence based on an "assumed error harmlessness inquiry"). Thus, this error was not harmless.

VI.

Based on the foregoing, we affirm the district court's conclusion that Pena's Texas burglary conviction is properly classified as an aggravated felony for purposes of 8 U.S.C. § 1326(b)(1)–(2). But we vacate and remand this matter in part for resentencing under the appropriate sentencing guidelines consistent with this opinion.

*AFFIRMED IN PART, VACATED AND REMANDED IN PART*