# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1233

_____

United States of America

*Plaintiff - Appellee*

v.

Jason Daniel Sims

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: July 18, 2019
Filed: August 13, 2019

_____

Before GRUENDER and BENTON[1], Circuit Judges, and SCHREIER,[2] District
Judge.

_____

GRUENDER, Circuit Judge.

---

[1]The Honorable Duane Benton was added to the panel following the retirement
of the Honorable William Jay Riley.

[2]The Honorable Karen E. Schreier, United States District Judge for the District
of South Dakota, sitting by designation.

Jason Daniel Sims pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[3] sentenced him as an armed career criminal, and Sims appealed. We vacated Sims's sentence and remanded for resentencing, *United States v. Sims*, 854 F.3d 1037, 1040 (8th Cir. 2017), but the Supreme Court granted *certiorari*, 138 S. Ct. 1592 (2018), vacated our judgment, and remanded for further proceedings, *United States v. Stitt*, 139 S. Ct. 399, 408 (2018). We now affirm the district court's judgment.

The Armed Career Criminal Act ("ACCA") imposes a mandatory fifteen-year minimum sentence on a defendant convicted of being a felon in possession of a firearm or ammunition who has three or more previous convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). The district court designated Sims an armed career criminal based on four convictions: two Arkansas residential burglaries and two serious drug offenses. Sims's advisory sentencing guidelines range was 188 to 235 months' imprisonment, and the district court imposed a 210-month sentence. Sims appealed, arguing that his previous Arkansas burglary convictions do not qualify as violent felonies and that he therefore lacks the three or more convictions necessary to qualify as an armed career criminal.

The ACCA specifically enumerates burglary as a violent felony. 18 U.S.C. § 924(e)(2)(B)(ii). But the Supreme Court has determined that Congress intended burglary only in "the generic sense in which the term [was] used in the criminal codes of most States," which the court defined as "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *See Taylor v. United States*, 495 U.S. 575, 598 (1990). To determine whether a burglary conviction qualifies as generic burglary, a court must apply the categorical approach: it compares the elements of the crime of conviction to the elements of generic burglary and

---

[3]The Honorable James M. Moody Jr., United States District Judge for the Eastern District of Arkansas.

determines whether they "sufficiently match." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). A burglary conviction counts as a violent felony under the ACCA if its "*elements* are the same as, or narrower than, those of the generic offense." *Id.* When applying the categorical approach, a court may consider only the elements of the crime of conviction, and it must ignore the particular facts of the case. *Id.* That is, "if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA 'burglary'—even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries." *Id.*

Under Arkansas law at the time of Sims's burglaries, "[a] person commits residential burglary if he enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment." Ark. Code Ann. § 5-39-201(a)(1) (1997). A "'[r]esidential occupiable structure' means a vehicle, building, or other structure: (A) Where any person lives; or (B) Which is customarily used for overnight accommodation of persons whether or not a person is actually present." *Id.* § 5-39-101(1) (1997).

Sims argues that generic burglary's "building or structure" element does not encompass vehicles and thus that the Arkansas residential burglary statute is broader than generic burglary. Relying on *United States v. Lamb*, 847 F.3d 928 (8th Cir. 2017) (stating that a Wisconsin statute covering burglary of motor homes, among other things, is broader than generic burglary) and several Supreme Court cases, *see, e.g.*, *Shepard v. United States*, 544 U.S. 13, 15-16 (2005) (specifying that the ACCA "makes burglary a violent felony only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle"); *Mathis*, 136 S. Ct. at 2250 (concluding that an Iowa burglary statute was non-generic because it "reaches . . . *land, water, or air vehicle*[*s*]"), we agreed that the Arkansas residential burglary statute is not a violent felony under the categorical approach and vacated his sentence. *Sims*, 854 F.3d at 1039-40.

But the Supreme Court granted *certiorari* in Sims's case and a companion case from the Sixth Circuit, *see United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) (en banc), *cert. granted*, 138 S. Ct. 1592 (2018), and held that "burglary of a structure or vehicle that has been adapted or is customarily used for overnight accommodation" qualifies as generic burglary, *Stitt*, 139. S. Ct. at 403-04. This resolved the companion Sixth Circuit case because the Tennessee burglary statute at issue applies to vehicles only if they are "designed or adapted for the overnight accommodation of persons." *See* Tenn. Code Ann. §§ 39-14-403(a), 39-14-401(1). But the Supreme Court did not address the additional prong of the Arkansas statute at issue in Sims's case prohibiting intrusions into a vehicle "[w]here any person lives." *See Stitt*, 139. S. Ct. at 407-08. Because the Supreme Court did not consider this additional language, the Court remanded for us to consider whether the fact that the Arkansas statute "might cover a car in which a homeless person occasionally sleeps" means that Sims's crime of conviction remains broader than generic burglary. *Id.* We review *de novo* the question of whether a conviction qualifies as a violent felony under the ACCA. *United States v. Thornton*, 766 F.3d 875, 878 (8th Cir. 2014).

The Supreme Court has emphasized that "a good rule of thumb for reading [its] decisions is that what they say and what they mean are one and the same." *Mathis*, 136 S. Ct. at 2254. Applying this rule of thumb here, we conclude that the Supreme Court's opinion in *Stitt* dictates that Arkansas burglary does "sufficiently match" generic burglary and qualifies as a violent felony.

In holding that "burglary of a structure or vehicle that has been adapted or is customarily used for overnight accommodation" is generic burglary, the Court first considered "'the generic sense in which the term [was] used in the criminal codes of most States' at the time the [ACCA] was passed." *Stitt*, 139 S. Ct. at 406 (first alteration in original) (quoting *Taylor*, 495 U.S. at 598). In a supplemental letter brief, the Government points to the various state burglary laws at the time Congress passed

the ACCA in 1986 and argues that Arkansas's residential burglary statute qualifies as generic burglary because a majority of states had similar laws. In addition, the Supreme Court's opinion in *Stitt* also relies on the definition of burglary in the Model Penal Code. *Id.* In his supplemental letter brief, Sims counters the Government's argument by pointing out that the Model Penal Code's definition of burglary includes "vehicles adapted for overnight accommodation" but "exclude[s] from burglary intrusions into . . . motor vehicles other than home trailers or mobile offices" even though "a person *could* sleep or conduct business in such a place." Model Penal Code § 221.1 cmt. (3)(b). Though the Model Penal Code lends support to Sims's view, we believe the Government has the better of this argument about the meaning of generic burglary at the time Congress passed the ACCA.

Besides the state of the law in 1986, the Supreme Court's opinion in *Stitt* also relies on a more functional rationale. The Court observed that Congress "viewed burglary as an inherently dangerous crime because burglary creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." *Stitt*, 139 S. Ct. at 406 (internal quotations marks omitted). The Court explained that "[a]n offender who breaks into a mobile home, an RV, a camping tent, a vehicle, or another structure that is adapted for or customarily used for lodging runs a similar or greater risk of violent confrontation." *Id.* And the Court found it irrelevant that such residences might be used less frequently than traditional homes. *Id.* It saw "no reason to believe that Congress intended to make a part-time/full-time distinction. After all, a burglary is no less a burglary because it took place at a summer home during the winter, or a commercial building during a holiday." *Id.*

We find the Court's reasoning regarding Congress's concern for violent crime equally applicable to the Arkansas residential burglary statute encompassing burglary of a vehicle "[w]here any person lives." To be sure, the statute's plain language arguably applies to an intrusion into an ordinary vehicle in which a homeless person

is living even if it has not been modified for residential use, and Sims argues that such a vehicle's "appearance and customary use" would not put an offender on notice of the potential for confrontation.[4] But the Supreme Court's analysis in *Stitt* "focus[ed] upon circumstances where burglary is likely to present a serious risk of violence" without considering the offender's awareness of those circumstances. *Id.* at 407. An intrusion into a vehicle in which someone is living is necessarily "an inherently dangerous crime" even if the perpetrator fails to recognize that someone lives there. *See id.* at 406. Indeed, the Court favorably cited a Tenth Circuit decision noting that burglaries of less traditional structures "pose a greater risk of violence to the occupant or owner than the burglary of a building or house because it is more difficult for the burglar to enter or escape unnoticed." *United States v. Spring*, 80 F.3d 1450, 1462 (10th Cir. 1996). This reasoning is no less true of an ordinary vehicle in which someone happens to be living. For example, it would be difficult for the offender to enter or escape unnoticed if he entered a van unaware that someone was sleeping in the back seat. In short, we agree that the Model Penal Code's emphasis on the "*apparent* potential for regular occupancy" ensures that an "intruder is ordinarily well able to judge whether the structure is a . . . place where people might normally be present." *See* Model Penal Code § 221.1 cmt. (3)(b) (emphasis added). But given the malleable and ever-changing nature of modern residences, the meaning of generic burglary was not so limited in 1986. *Cf. Dwelling*, *Black's Law Dictionary* (5th ed. 1979) (defining dwelling to include "a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence").

---

[4]The Government contends that the statute applies to vehicles only if they "exhibit some physical alterations or modifications," effectively collapsing the distinction between the two subsections of the definition of residential occupiable structure. The Government observes that this does not make the statutory language superfluous because it applies to buildings or other structures as well as vehicles (*e.g.*, a building "where any person lives" and a vehicle "which is customarily used for overnight accommodation of persons"). We assume without deciding that the plain language of the statute does extend to vehicles in which any person lives even if the vehicles lack physical alterations or modifications.

Of course, as *Stitt* recognizes, a statute that prohibits breaking and entering into *any* vehicle does not qualify as generic burglary. *Stitt*, 139 S. Ct. at 407. But Arkansas criminalizes unlawful entry into a vehicle not used for residential purposes in a separate statute. *See* Ark. Code. Ann. § 5-39-202 (2013). As the Arkansas Supreme Court explained, "The obvious reason for the distinction between our burglary and breaking and entering statutes is the intent of the general assembly to punish burglary more severely because it involves entering a place where people, as opposed to mere property, are likely to be." *Julian v. State*, 767 S.W.2d 300, 301 (Ark. 1989). Because the Arkansas statute at issue here applies only to vehicles in which someone lives or that are customarily used for overnight accommodation, it addresses the risk of violence that concerned Congress when it passed the ACCA. *See Taylor*, 495 U.S. at 594 (describing Congress as "immersed in the intensely practical concerns of controlling violent crime").

Finally, one benefit of *Stitt*'s straightforward focus on the potential for violent confrontation is that it brings all residences within the ambit of generic burglary. While this was not true historically, *see, e.g.*, 4 William Blackstone, *Commentaries*, *226 ("Neither can burglary be committed in a tent or booth erected in a market or fair; though the owner may lodge therein: for the law regards thus highly nothing but permanent edifices . . . ." (citation omitted)), generic burglary affords the same protection to a homeless person living in a car that it does to a person living in a manor, *see Stitt*, 860 F.3d at 880-81 (Sutton, J., dissenting) ("Let them live in 'mansion houses' may have been an answer to those who wanted the protection of the burglary laws for lesser dwellings a long time ago. But that has not been true for many decades."); *United States v. Rivera-Oros*, 590 F.3d 1123, 1130 (10th Cir. 2009) ("[T]he unique wounds caused by residential burglary are independent of the size or construction of the dwelling. They are the same for the mansion house and the boarding house, the tract home and the mobile home.").

Accordingly, we vacate our prior opinion and affirm the judgment of the district court.

_____