In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3008

CLAYTON LEE WAAGNER,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:16-cv-02156 — **Sue E. Myerscough**, *Judge.*

ARGUED MAY 20, 2020 — DECIDED AUGUST 20, 2020

Before SYKES, *Chief Judge*, and RIPPLE and KANNE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Clayton Waagner filed a second collateral attack on his sentence under 28 U.S.C. § 2255. He now claims that his classification as an armed career criminal under the Armed Career Criminal Act ("ACCA") is improper in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015). Specifically, he challenges the classifications of his Ohio aggravated burglary convictions

and Ohio attempted robbery conviction as violent felonies under the ACCA. The district court denied his motion. It concluded that, although his prior convictions for Ohio aggravated burglary no longer constitute predicate offenses for ACCA purposes under the invalidated residual clause, they still qualify as predicate offenses under the enumerated offenses clause of that statute.

We now affirm the judgment of the district court. We agree with Mr. Waagner that the advent of *Johnson* permits him to bring a second motion under § 2255, because prior to *Johnson,* any such challenge would have been futile. Nonetheless, because Ohio aggravated burglary and Ohio attempted robbery are violent felonies as that term is defined in the ACCA, the sentencing court properly adjudicated Mr. Waagner as an armed career criminal.

## I

## BACKGROUND

### A.

After a jury trial in 2000, the United States District Court for the Central District of Illinois convicted Mr. Waagner of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and of possessing a stolen vehicle that had crossed a state line, in violation of 18 U.S.C. § 2313(a). At sentencing, the district court adopted the finding of the presentence investigation report ("PSR") that Mr. Waagner was an armed career criminal under the ACCA. The ACCA mandates increased sentences for defendants who have amassed qualifying prior convictions, termed "predicate offenses." One such predicate offense is a "violent felony," defined as:

> (B) any crime punishable by imprisonment for a term exceeding one year … that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The Supreme Court of the United States now has held that the last clause of this provision—italicized above and known in common parlance as the "residual clause"—is unconstitutionally vague. *See Johnson*, 576 U.S. 591. Consequently, under current law an offense is a violent felony within the meaning of § 924(e)(2)(B) only if it qualifies under the "elements" clause or the "enumerated offenses" clause.

The PSR, submitted in preparation for Mr. Waagner's sentencing, recited that he had at least three prior convictions that qualified as predicate offenses: two 1978 convictions for Ohio aggravated burglary and one 1992 conviction for Ohio attempted robbery. These prior offenses qualified Mr. Waagner as an armed career criminal with a sentencing guidelines range of 262 to 327 months' imprisonment.[1] They

---

[1] Additionally, the PSR noted a 1975 conviction for Virginia statutory burglary and a 1978 conviction for Georgia burglary. The district court did not rely upon these convictions in determining Mr. Waagner's status as an armed career criminal.

also carried a statutory minimum imprisonment of fifteen
years.

While awaiting sentencing, Mr. Waagner escaped from
custody and, while a fugitive, committed various other of-
fenses in multiple districts. After his apprehension, he
pleaded guilty to a charge of escape. At sentencing, the dis-
trict court imposed a sentence of 327 months' imprisonment
for the felon-in-possession charge and 120 months' for the
stolen vehicle charge, to run concurrently, and an additional
37 months' for the escape charge. The total sentence was 364
months' imprisonment.[2]

**B.**

Mr. Waagner's direct appeal of his conviction and sen-
tence was not successful. *See United States v. Waagner*, 319
F.3d 962 (7th Cir. 2003). In 2013, he filed a § 2255 motion col-
laterally attacking his sentence in light of the Supreme
Court's decision in *Descamps v. United States*, 570 U.S. 254
(2013). That decision had resolved a division among the cir-
cuits about the application of the "categorical approach"

---

[2] Mr. Waagner also was convicted and sentenced in multiple other fed-
eral courts. The Middle District of Pennsylvania imposed a sentence of
400 months' imprisonment, to run concurrently with the sentence in the
Central District of Illinois. The 400-month sentence was reduced to a
250-month sentence after Mr. Waagner filed an unopposed § 2255 mo-
tion in light of *Johnson v. United States*, 576 U.S. 591 (2015). He also was
sentenced to 228 months' imprisonment by the Eastern District of Penn-
sylvania, to be served concurrently to the sentence here; and 235 months'
imprisonment by the Southern District of Ohio, to be served consecutive-
ly. He filed a § 2255 motion in the Southern District of Ohio in light of
*Johnson*, but the court denied his motion.

employed by the courts to determine whether a prior conviction is a predicate offense under the ACCA.

In applying the categorical approach, a court compares the elements of the statute with the elements of the "generic" crime. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). If a statute's elements cover conduct broader than the elements of the generic offense, the offense does not qualify as an ACCA predicate. *Id.* If a statute is "divisible," that is, if there are alternative ways to violate it, a court applies the "modified categorical approach." *Id.* at 2249. It may look at certain documents in addition to the elements of the offense to determine which alternative formed the basis of the conviction. *Id.* The court then applies the categorical approach, comparing the elements of the offense of conviction (specifically, the alternative that formed the basis of conviction) with the elements of the generic offense. In *Descamps*, the Supreme Court held that a court may not apply the modified categorical approach—and thus may not consult additional documents outside of the elements of the offense—when a defendant is convicted under an indivisible statute. 570 U.S. at 258.

In his first § 2255 motion, Mr. Waagner contended that his Ohio aggravated burglary convictions were actually burglary convictions. He argued that Ohio burglary, like the California burglary statute in *Descamps*, is broader than generic burglary and that therefore, a conviction under the Ohio statute did not qualify as a violent felony under the ACCA. The district court denied Mr. Waagner's motion. It concluded that Ohio's burglary statute is distinguishable from the statute in *Descamps* and that burglary under Ohio law involves the risk of physical injury to another. Thus, the

court rejected Mr. Waagner's argument that his prior convictions were not predicate offenses for ACCA purposes.[3]

After the Supreme Court's decision in *Johnson*, we granted Mr. Waagner permission to file a second or successive § 2255 motion, which is the motion on appeal before us. In the successive motion, Mr. Waagner challenged his sentence in light of *Johnson*, which held unconstitutional the residual clause of the ACCA.

Before the district court, Mr. Waagner contended that his prior convictions for Ohio aggravated burglary qualified as predicate offenses *only* under the now-invalid residual clause. He therefore argued that the convictions could no longer form the basis for his classification as an armed career criminal. He further submitted that the Government could not argue that Ohio aggravated burglary falls within the scope of generic burglary under the ACCA (and thus is a predicate offense under the enumerated offenses clause). As he saw the matter, during the first § 2255 motion, the Government had conceded that Ohio aggravated burglary is *not* within the scope of generic burglary, and therefore it could not argue the contrary position in the second § 2255 proceedings. Mr. Waagner also contended that his prior conviction for Ohio attempted robbery did not constitute a predicate offense.

---

[3] *See Waagner v. United States*, No. 2:13-cv-02277 (C.D. Ill. Apr. 8, 2014). Mr. Waagner appealed the dismissal of his § 2255 motion, but the case was dismissed for failure to timely pay the required docketing fee, pursuant to Circuit Rule 3(b). *Waagner v. United States*, No. 14-2397 (7th Cir. July 30, 2014).

In response, the Government first argued that Mr. Waagner was not entitled to bring a second § 2255 motion. In its view, the claim did not actually arise from the Supreme Court's decision in *Johnson* and therefore was not based on a new rule of constitutional law, as required by the statute governing successive collateral attacks.[4] The Government further contended that, in any event, all five of Mr. Waagner's prior convictions—including his Virginia and Georgia convictions, which the district court had not used as a basis for his ACCA classification—qualified as violent felonies.[5]

The district court determined that Mr. Waagner's claim relied on *Johnson* because it was not until the residual clause was invalidated that he was able to file a nonfrivolous motion for relief. Prior to *Johnson*, any attack on the Ohio statute under the enumerated offenses clause would have been met by the rejoinder that the convictions certainly fell under the

---

[4] 28 U.S.C. § 2255(h) permits a second or successive motion if it contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

[5] *See supra* note 1; *see also* R.6 at 8 ("In the alternative, the United States requests that this Court deny [Mr. Waagner's] claims on the merits because he is properly classified as an Armed Career Criminal based on his five qualifying convictions for violent felonies.").

residual clause. Nonetheless, the district court held that his prior convictions for Ohio aggravated burglary and Ohio attempted robbery were violent felonies under the ACCA. It rejected Mr. Waagner's contention that estoppel prevented the Government from arguing that aggravated burglary was not a violent felony. In its view, collateral estoppel did not apply because the relevant legal principles had changed: "[i]ndeed, if the legal principles had not changed, Waagner would not be able to bring his claim at all."[6] The court also rejected the Government's argument that Mr. Waagner's additional prior convictions under Virginia and Georgia law constituted predicate offenses. However, because Mr. Waagner's three prior Ohio convictions qualified as violent felonies under the ACCA, the district court affirmed his status as an armed career criminal and denied his § 2255 motion.

Mr. Waagner timely appealed.

## II

## ANALYSIS

### A.

We review de novo the legal questions presented on appeal from a district court's denial of a § 2255 motion. *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017). We first address the Government's threshold contention that Mr. Waagner cannot bring a second or successive § 2255 motion.

---

[6] R.14 at 18.

Section 2255 provides an avenue for relief for federal prisoners who contend that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." § 2255(a). A petitioner must file a § 2255 motion within one year from the date that the conviction becomes final, or, as relevant here, one year from "the date on which the right asserted was initially recognized by the Supreme Court … and made retroactively applicable to cases on collateral review." § 2255(f)(3). Accordingly, a motion to vacate, set aside, or correct a sentence based on the Supreme Court's decision in *Johnson* must be filed within one year of *Johnson*. *See Cross v. United States*, 892 F.3d 288, 293 (7th Cir. 2018).

Mr. Waagner filed his motion within one year of *Johnson*, but the Government nonetheless submits that the motion is untimely because it is not based on *Johnson*. In the Government's view, Mr. Waagner has not demonstrated that, at sentencing, the district court relied solely on the residual clause. Rather, at the time of sentencing, the district court could have treated Mr. Waagner's prior convictions for Ohio aggravated burglary as violent felonies under the enumerated offenses clause and his prior conviction for Ohio attempted robbery as a violent felony under the elements clause. In that sense, the Government's argument goes, *Johnson* did not necessarily impact Mr. Waagner's sentence. In the Government's view, Mr. Waagner cannot use *Johnson* as a "back-door" way to challenge his sentence simply because he theoretically could have been sentenced under the residual clause.

The Government also submits that Mr. Waagner's claims actually are based on an application of the modified categorical approach for the enumerated offenses or elements clauses, as clarified by the Supreme Court in *Descamps* and *Mathis*. *Descamps* elucidated the proper way to conduct the analysis, explaining that the modified categorical approach applies only when a statute is divisible. 570 U.S. at 263–64. *Mathis* held that the general rule that a prior conviction qualifies as a predicate offense only if its elements match or are narrower than those of the generic offense remains true when applying the modified approach. 136 S. Ct. at 2251 (2016). As the Government reminds us, *Descamps* and *Mathis* are not "new rule[s] of constitutional law, made retroactive to cases on collateral review by the Supreme Court," that would provide the basis for a successive § 2255 motion. *Mathis* resolved a matter of statutory interpretation, rather than announced a new rule of constitutional law that could provide a foundation for a § 2255 claim. *Dawkins v. United States*, 829 F.3d 549, 551 (7th Cir. 2016). "[T]he Supreme Court has not made *Descamps* retroactive on collateral review," *Groves v. United States*, 755 F.3d 588, 593 (7th Cir. 2014), and in any case, a claim founded on *Descamps* would have been untimely. Mr. Waagner filed this motion in 2016. Therefore, the timeliness of Mr. Waagner's claim depends on whether it is based on *Johnson*. *See Cross*, 892 F.3d at 293 ("the timeliness of Cross's … motion[] hinges on whether the right [he] 'assert[s] was initially recognized by' *Johnson*") (quoting § 2255(f)(3)).

Rejecting the Government's view, the district court concluded that Mr. Waagner's claim *did* rely on *Johnson* because it was not until that decision that Mr. Waagner had a non-frivolous claim for relief. Before *Johnson*, had he contended

that his convictions were not violent felonies under the enumerated offenses clause, his challenge would have been frivolous; the offenses remained violent felonies under the residual clause. We considered a similar scenario in *Cross*, 892 F.3d 288. There, two individuals were sentenced on the basis of the residual clause and challenged their sentences in the wake of *Johnson*. One of the defendants faced an obstacle: at the time of sentencing, his prior conviction also would have qualified as a violent felony under the elements clause. *Id.* at 296. Since then, however, the Supreme Court had held otherwise. *Curtis Johnson v. United States*, 559 U.S. 133 (2010).[7] We explained that *Johnson*, not *Curtis Johnson*, triggered the petitioner's right to file a § 2255 motion:

> Prior to *Johnson*, Davis had no basis to assert that his sentence was illegal and thus he could not claim a right to be released. *Curtis Johnson* did not change that fact: all it did was to eliminate the elements clause as a basis for Davis's status, which is entirely dependent on the residual clause. There matters stayed until *Johnson*. Only then could Davis file a nonfrivolous motion for relief.

---

[7] In *Curtis Johnson v. United States*, 559 U.S. 133 (2010), the Supreme Court held that "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. The defendant in *Cross v. United States*, 892 F.3d 288, 297 (7th Cir. 2018), had a Wisconsin conviction for simple robbery, which requires the use of force; however, the statute had been interpreted to include nonviolent physical contact. Therefore, we held that the Wisconsin statute "does not trigger the elements clause under *Curtis Johnson*." *Id.*

*Cross*, 892 F.3d at 297. In *Cross*, however, it was undisputed that the petitioners had been sentenced under the residual clause.

Here, unlike in *Cross*, it is unclear on what basis Mr. Waagner was sentenced. The courts of appeals are divided on whether a petitioner who files a *Johnson*-based successive § 2255 motion must establish "that it was more likely than not that he was sentenced under the residual clause." *United States v. Clay*, 921 F.3d 550, 559 (5th Cir. 2019) (holding that the petitioner has the burden to show that he was sentenced under the residual clause).[8] We have not yet taken a position on the question. We have held that *Johnson* does not open a new window for collateral attack whenever an individual could have been sentenced under the residual clause. For instance, we have concluded that *Johnson* did not restart the clock for a defendant to argue that his offense was not a violent felony under the elements clause when *only* the elements clause had played a part in the district court's clas-

---

[8] *See also Dimott v. United States*, 881 F.3d 232, 243 (1st Cir. 2018) (holding that "to successfully advance a *Johnson* … claim on collateral review, a habeas petitioner bears the burden of establishing that it is more likely than not that he was sentenced solely pursuant to ACCA's residual clause"); *United States v. Peppers*, 899 F.3d 211, 235 n.21 (3d Cir. 2018) (same); *Potter v. United States*, 887 F.3d 785, 788 (6th Cir. 2018) (same); *Walker v. United States*, 900 F.3d 1012, 1015 (8th Cir. 2018) (same); *United States v. Washington*, 890 F.3d 891, 896 (10th Cir. 2018) (same); *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017) (same); *but see United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017) (holding that the petitioner need only show that his "sentence may have been predicated on application of the now-void residual clause"); *United States v. Geozos*, 870 F.3d 890, 896 (9th Cir. 2017) (same).

sification of the offense. *Stanley v. United States*, 827 F.3d 562 (7th Cir. 2016). In that case, however, the defendant did not challenge his sentence on appeal or under § 2255 within the one-year limitations period. We rejected his claim that *Johnson* started a new one-year period to seek relief, noting:

> Perhaps a prisoner could argue that he decided not to press an argument about the elements clause at sentencing, or on appeal, when the only consequence would have been to move a conviction from the elements clause to the residual clause. Then it would be possible to see some relation between *Johnson* and a contention that the conviction has been misclassified, for the line of argument could have been pointless before *Johnson* but dispositive afterward. But this is not the sort of argument that Stanley makes.

*Id.* at 565. We have cautioned against making too much of the "possible exception to the rule that a sentence under the elements clause is unaffected by *Johnson*." *Sotelo v. United States*, 922 F.3d 848, 853 (7th Cir. 2019).[9]

---

[9] The defendant in *Sotelo v. United States*, 922 F.3d 848 (7th Cir. 2019), had been convicted of mailing extortionate communications and mailing threatening communications, in violation of 18 U.S.C. § 876(b) and (c). The sentencing court classified his convictions as "crimes of violence" under § 4B1.2(a) of the United States Sentencing Guidelines, which are analogous to "violent felonies" in the ACCA. *See United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008) (explaining that the definition of a "crime of violence" is interpreted in the same way as the definition of a "violent felony").

(continued … )

*Stanley* and *Sotelo* do not control Mr. Waagner's case. It is substantially different from the circumstances presented in those situations. In his first § 2255 motion, he challenged the classification of his prior convictions for Ohio aggravated burglary on the ground that these offenses were not violent felonies under the enumerated offenses clause. The district court denied his motion *based on the residual clause*: "[t]he lesser charge of burglary under Ohio law 'involves conduct that presents a serious potential risk of physical injury to another,' 18 U.S.C. § 924(e)(2)(B)(ii)." *Waagner*, No. 2:13-cv-02277, at 3–4. Notably, the judge who rejected Mr. Waagner's first § 2255 motion (on the ground that his prior convictions were violent felonies under the residual clause) was the same judge who originally had sentenced

---

( … continued)

Sotelo filed a § 2255 motion years later, after *Johnson*. His claim, however, rested primarily on another case, *Mathis v. United States*, 136 S. Ct. 2243, which clarified the application of the modified categorical approach. Sotelo asserted that under the *Mathis* framework, his convictions were not categorically crimes of violence under the elements clause because in his view, the statute was indivisible and covered conduct that did not necessary involve the use of force.

We rejected his argument that *Johnson* gave him a chance to attack his sentence. First, we noted that "[a]t sentencing, the district court repeatedly made clear that Sotelo was being sentenced under the elements clause," not the residual clause. *Sotelo*, 922 F.3d at 852. "The essence of Sotelo's claim for relief" was "under *Mathis*." *Id.* at 854. Sotelo contended that "before *Johnson*, he could only have filed a 'pointless' petition that would have served merely to move his § 876 conviction from the elements to the residual clause." *Id.* at 853. But that argument failed in part because Sotelo, like the petitioner in *Stanley*, had never made this argument before the appeal.

him as an armed career criminal. This factor lends support to Mr. Waagner's contention that his original sentence was based on the residual clause. *See Potter v. United States*, 887 F.3d 785, 788 (6th Cir. 2018) ("[T]he judge who reviewed his § 2255 motion is the same judge who sentenced him. It is difficult to think of a better source of information about what happened the first time around."). A § 2255 motion based on the enumerated offenses clause not only *would have been* fruitless, it actually *was* futile. It was *Johnson* that opened the door to Mr. Waagner's challenge to the classification of his Ohio aggravated burglary convictions.

We therefore conclude that Mr. Waagner can bring a § 2255 motion insofar as it challenges the classification of his Ohio aggravated burglary convictions. The same is not necessarily true, however, for his challenges to the other prior convictions. Each claim must be evaluated individually. *Hrobowski v. United States*, 904 F.3d 566, 569 (7th Cir. 2018). Regardless, we need not consider whether *Johnson* opened the door for us to review anew Mr. Waagner's prior conviction for Ohio attempted robbery. *Id.* His challenge in this regard must fail. He contends that the offense of attempted robbery cannot be counted as a violent felony under the elements clause. While Ohio's attempted robbery statute requires the use, attempted use, or threatened use of force, he submits, the state's "attempt statute" does not. As Mr. Waagner himself acknowledges, this argument is foreclosed by *Hill v. United States*, 877 F.3d 717 (7th Cir. 2017). We held in *Hill* that "[w]hen a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony." *Id.* at 719. We see no reason to revisit that decision.

**B.**

We now address the question at the heart of
Mr. Waagner's appeal: whether his prior convictions for
Ohio aggravated burglary are violent felonies under the
ACCA.

**1.**

Before examining the merits of this issue, we address
Mr. Waagner's argument that the Government is collaterally
estopped from taking the position that Ohio aggravated
burglary meets the generic definition of burglary.

In litigating the first § 2255 motion, the Government con-
ceded that Ohio aggravated burglary did not meet the gener-
ic definition of burglary; it nevertheless maintained that the
offense qualified as a violent felony under the residual
clause. Now that the Supreme Court has determined that the
residual clause is unconstitutionally vague, the Government
takes the contrary position that Ohio aggravated burglary
*does* meet the generic definition of burglary and, accordingly,
constitutes a violent felony under the enumerated offenses
clause. Mr. Waagner submits that the doctrine of collateral
estoppel prevents the Government from changing its posi-
tion.

The doctrine of collateral estoppel, also known as issue
preclusion, "ordinarily bars relitigation of an issue of fact or
law raised and necessarily resolved by a prior judgment."
*Bravo-Fernandez v. United States*, 137 S. Ct. 352, 358 (2016). In
general, collateral estoppel applies when four distinct condi-
tions are met:

> 1) the issue sought to be precluded must be the
> same as that involved in the prior action, 2) the

> issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

*Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987).

Mr. Waagner seeks to preclude the Government from arguing that Ohio aggravated burglary is generic burglary. But that issue was not actually decided in the prior litigation. In denying Mr. Waagner's first § 2255 motion, the district court concluded that Ohio aggravated burglary qualified as a violent felony under the residual clause. That question is, of course, distinct from the question of whether the state law offense constituted a violent felony under the enumerated offenses clause. It may be true that the Government at the time conceded that the offense did not meet the definition of generic burglary, but its taking that position was irrelevant to the court's decision. The determination of whether the state law offense qualified as a violent felony under the enumerated offenses clause was neither specifically decided nor essential to the final judgment. "The fundamental rationale of issue preclusion dictates the clearly settled requirement that it be limited to matters that have been actually decided." 18 Charles Alan Wright et al., Federal Practice and Procedure § 4420 (3d ed. 1998); *see Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533, 542 (7th Cir. 2008) (noting that collateral estoppel did not prevent plaintiffs from making certain claims when the state court in the previous litigation had made no determination about those claims, "as such claims were not before it"). Accordingly, the Government may argue that the state offense is generic burglary.

**2.**

We now turn to the central question of whether Ohio aggravated burglary constitutes a violent felony under the ACCA. An offense is a "violent felony" under ACCA's enumerated offenses clause if it is a felony, state or federal, that "is burglary, arson, or extortion." § 924(e)(2)(B)(ii). In interpreting the scope of these terms, we understand Congress to have used them to include "generic" versions of the enumerated offenses. "[A]s to burglary … Congress meant a crime 'contain[ing] the following elements: an unlawful or unprivileged entry into … a building or other structure, with intent to commit a crime.'" *Mathis*, 136 S. Ct. at 2248 (alteration in original) (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)). We examine only the elements of the state law offense, without regard to the state's characterization of the offense or the particular facts of the case. *Taylor*, 495 U.S. at 600–01.

> A crime counts as "burglary" under the Act if its elements are the same as, or narrower than, those of the generic offense. But if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA "burglary"—even if the defendant's actual conduct (i.e., the facts of the crime) fits within the generic offense's boundaries.

*Mathis*, 136 S. Ct. at 2248.[10]

---

[10] As we explained earlier, under *Mathis*, 136 S. Ct. 2243, if a crime is indivisible, that is, if there is one set of elements to define one crime, the "categorical approach" calls for a straightforward comparison of those

(continued … )

Mr. Waagner was convicted of Ohio aggravated burglary. At the time he was convicted in 1978, the relevant statute provided:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
> (2) The offender has a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;
>
> *(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.*

---

( … continued)

elements with the elements of the generic offense. The "modified categorical approach" requires an extra step when a statute is divisible, that is, if there are multiple alternative elements. In such a case a court will consider certain documents to determine exactly what offense (and thus what elements) a defendant was convicted of committing. Only then will the court proceed to compare those elements with the elements of the generic offense.

Ohio Rev. Code § 2911.11 (emphasis added). Ohio defined "occupied structure" to mean:

> any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
>
> (A) Which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied, and whether or not any person is actually present;
>
> (B) Which at the time is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present;
>
> (C) Which at the time is specially adapted for the overnight accommodation of any person, whether or not any person is actually present;
>
> (D) In which at the time any person is present or likely to be present.

Ohio Rev. Code § 2909.01. The statute has since been amended, but our analysis focuses on the previous version of the Ohio aggravated burglary statute, which was in effect at the time Mr. Waagner was convicted in 1978.

Mr. Waagner was convicted of violating section 2911.11(A)(3).[11] Accordingly, we compare the elements of

---

[11] On appeal, the parties appear to agree that the statute is divisible. There is no dispute that Mr. Waagner's conviction is under section

(continued … )

Ohio aggravated burglary under section 2911.11(A)(3) with the elements of the generic offense of burglary, which the Supreme Court has defined as "an unlawful or unprivileged entry into … a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. Mr. Waagner contends that the Ohio aggravated burglary statute falls outside the category of generic burglary because it defines "occupied structure" too broadly: specifically, it includes burglaries of cars not designed or adapted for overnight accommodation so long as a person is temporarily living in the car.

State burglary statutes that prohibit burglary of a non-permanent structure or vehicle that is customarily used or has been adapted for overnight accommodation fall within the scope of generic burglary. *United States v. Stitt*, 139 S. Ct. 399 (2018). The Supreme Court in *Stitt* observed that such structures or vehicles were covered by a majority of state burglary statutes at the time the ACCA was enacted; and the inclusion of such structures served ACCA's purpose of addressing burglary's inherent danger in "creat[ing] the possibility of a violent confrontation." *Id.* at 406. The Court took care to distinguish the Tennessee and Arkansas statutes at issue in *Stitt* from the Missouri statute considered in *Taylor*. The Missouri statute prohibited breaking and entering "*any* boat or vessel, or railroad car." *Taylor*, 495 U.S. at 599. Unlike the statutes in *Stitt*, it "referred to ordinary boats and vessels often at sea (and railroad cars often filled with cargo, not people)" and did not restrict its coverage to "circumstances

( … continued)
2911.11(A)(3). Thus, our analysis focuses on that subsection of the statute.

where burglary is likely to present a serious risk of vio-
lence." *Stitt*, 139 S. Ct. at 407.[12]

With this guidance in mind, we examine the Ohio aggra-
vated burglary statute. Specifically, we consider whether the
state statute's inclusion of structures and vehicles not de-
signed or adapted for overnight accommodation, as long as
a person is present or likely to be present, renders it broader
than generic burglary.

Mr. Waagner focuses on ACCA's purpose of addressing
the inherent danger of the possibility of a violent confronta-
tion. The Ohio statute covers "ordinary vehicles" if they are
vehicles in which someone is present or likely to be present.
In Mr. Waagner's view, this additional requirement does not
do enough work. He notes that in *Stitt*, the Court explicitly
declined to decide whether an Arkansas statute is overbroad
because it covers burglary of a vehicle in which any person
lives. The defendant in that case had argued that "these
words might cover a car in which a homeless person occa-
sionally sleeps." *Id.* Because the argument rested in part on
state law and had yet to be considered by the lower courts,
the Supreme Court remanded the case.

In Mr. Waagner's view, generic burglary focuses not only
on the risk of confrontation between the intruder and anoth-

---

[12] The Court also distinguished the Iowa statute at issue in *Mathis*,
which included "ordinary vehicles" that "can be used for storage or
safekeeping," rather than for accommodation of people. *United States v.
Stitt*, 139 S. Ct. 399, 407 (2018). "That is presumably why … 'all parties
agree[d]' that Iowa's burglary statute 'covers more conduct than generic
burglary does.'" *Id.* (quoting *Mathis*, 579 U.S. at 2250).

er person, but also on the defendant's awareness of that risk. He submits that when an individual "knows of the risk of confrontation … [,] his decision to commit the offense despite that risk 'may mean that he is prepared to use violence if necessary to carry out his plans or to escape.'"[13] Under his theory, the Ohio statute is overbroad because it includes situations in which a defendant may not necessarily know that he poses a risk.

Mr. Waagner's analysis overlooks the statute's limiting language that serves to keep the offense within the boundaries of generic burglary. "The aggravated burglary statute, by its own terms, requires two elements of proof, permanent or temporary habitation and presence or likelihood of presence." *State v. Wilson*, 388 N.E.2d 745, 750 (Ohio 1979); *see also State v. Adams*, 45 N.E.3d 127, 174 (Ohio 2015) ("To establish that Adams committed aggravated burglary, … the state was required to show that at the time he entered the apartment, a person was present or likely to be present."). The twin requirements are independent. *Wilson*, 388 N.E.2d at 750 ("A structure can be one that was occupied as a permanent or temporary habitation without being one … where at the time anyone is present or likely to be present. The converse is also true.").

Further, the Supreme Court of Ohio has explained that the "presence" prong is no mere formality. In *Wilson*, it explicitly rejected the argument that "once the state proves that a permanent or temporary habitation has been burglarized, it is presumed that a person is likely to be present." *Id.* On

---

[13] Appellant's Br. 35–36 (quoting *Taylor*, 495 U.S. at 588).

the contrary, the fact that "a permanent or temporary habitation or dwelling has been burglarized … alone … will not compel a presumption that a person is likely to be present." *State v. Fowler*, 445 N.E.2d 1119, 1121 (Ohio 1983). The "presence" requirement ensures that the statute covers offenses involving precisely the "possibility of violent confrontation between the offender and an occupant" with which Congress was concerned. *Taylor*, 495 U.S. at 588. Indeed, that is exactly the purpose of the Ohio aggravated burglary statute: "[t]he intent of the General Assembly in enacting R.C. 2911.11 was to elevate the degree of burglary in those instances in which the victim was exposed to a greater risk of harm." *State v. Kilby*, 361 N.E.2d 1336, 1339 (Ohio 1977).

We therefore hold that the Ohio aggravated burglary statute meets the definition of generic burglary under the ACCA. In reaching this conclusion, our reasoning is aligned with the reasoning of the Eighth Circuit on remand from *Stitt*. *See United States v. Sims*, 933 F.3d 1009 (8th Cir. 2019).[14] The Eighth Circuit concluded that the Arkansas statute at issue, which encompassed burglary of a vehicle "[w]here any person lives," did fall within the category of generic burglary. *See id.* The court reasoned:

> [T]he Supreme Court's analysis in *Stitt* "focus[ed] upon circumstances where burglary is likely to present a serious risk of violence"

---

[14] *Stitt*, 139 S. Ct. 399, consolidated two cases, *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017), and *United States v. Sims*, 854 F.3d 1037 (8th Cir. 2017). The Supreme Court reversed the judgment of the Sixth Circuit and vacated the judgment of the Eighth Circuit and remanded the case.

> without considering the offender's awareness
> of those circumstances. An intrusion into a ve-
> hicle in which someone is living is necessarily
> "an inherently dangerous crime" even if the
> perpetrator fails to recognize that someone
> lives there.

*Id.* at 1014 (quoting *Stitt*, 139 S. Ct. at 407). Similarly, the Ohio legislature recognized that burglary of a vehicle in which a person is likely to be present creates a grave risk of harm.

Even more to the point, our reasoning aligns with that of the Sixth Circuit, which has held that the same statute we consider here—the previous version of Ohio aggravated burglary under section 2911.11(A)(3)—does qualify as a violent felony under ACCA's enumerated offenses clause. *Greer v. United States*, 938 F.3d 766 (6th Cir. 2019). The Sixth Circuit emphasized that section 2911.11(A)(3) requires both that the structure be a habitation and that a person be actually present or likely to be present. Examining Ohio courts' interpretation of the habitation and presence requirements, it concluded that "both of these attributes are highly fact-specific and dependent upon actual use and presence of a person." *Id.* at 777. This approach is consistent, the court noted, with the Supreme Court's decision in *Stitt*, because the "presence" requirement "goes to the core of the generic offense of burglary," that is, the serious risk of violence. *Id.* In addition, acknowledging that "our understanding of generic burglary is anchored by the ways in which the term was 'used in the criminal codes of most States' at the time the ACCA was passed," the Sixth Circuit examined state burglary statutes as they existed at the time and concluded that the majority

were broader than or substantially similar in scope to the Ohio statute. *Id.* at 778 (quoting *Taylor*, 495 U.S. at 598). Therefore, it stated, "the Ohio statute at issue … is no outlier." *Id.*[15]

Mr. Waagner criticizes *Greer* as "not well reasoned."[16] He contends that the Sixth Circuit "inappropriately prioritizes actual risk over the defendant's perceived risk." *Id.* He points to the Supreme Court's reasoning in *Taylor*:

> The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person … And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape.

495 U.S. at 588. But there is nothing to suggest that "the offender's own awareness" of the risk is a *requirement* of generic burglary. In *Stitt*, the Supreme Court rejected the argument that a statute could be overbroad if a vehicle or structure is used as an accommodation on a part-time basis because the risk of violence is diminished. "After all, a burglary is no less a burglary because it took place at a summer home during the winter, or a commercial building during a

---

[15] Mr. Waagner has given us no reason to believe that this assessment of state burglary statutes is flawed in any way that might require a plenary reexamination.

[16] Appellant's Reply Br. 11.

holiday." 139 S. Ct. at 406. This reasoning emphasizes the "apparent potential for regular occupancy," *id.* (quoting Model Penal Code § 221.1, Comment 3(b), p. 72), but it also indicates that the potential for risk is not tethered to the defendant's awareness of it. An individual who targets a commercial building during a holiday presents a diminished risk of actual violence and presumably has a diminished expectation of a violent encounter. Nonetheless, such a burglary is "no less a burglary." *Id.*

Mr. Waagner contends that we should impose an additional requirement to consider a state law offense generic burglary: the defendant's awareness of the risk of a violent encounter. But, as we have just noted, an examination of *Stitt* renders this suggestion unpersuasive. The Ohio aggravated burglary statute limits its coverage to occupied structures that are habitations and in which a person is present or likely to be present. These twin requirements confine the statute's scope to instances in which there is a "possibility of a violent confrontation." *Taylor*, 495 U.S. at 588. Therefore, Ohio aggravated burglary under section 2911.11(A)(3) falls within the category of generic burglary. Mr. Waagner's two convictions for Ohio aggravated burglary constitute violent felonies within the meaning of the ACCA.[17]

---

[17] The Government submits that Mr. Waagner's prior conviction for Georgia burglary qualifies as a violent felony under the ACCA. With respect to that question, however, we need not reach the merits. Mr. Waagner has three predicate offenses, enough to qualify him for career offender status under the ACCA regardless of whether his Georgia burglary conviction is also a predicate offense.

## Conclusion

For these reasons, the judgment of the district court is affirmed.

AFFIRMED